### FULLER v. BEMIS.

*(Circuit Court, S. D. New York. June 18, 1892.)*

COPYRIGHT—"DRAMATIC COMPOSITION"—STAGE DANCE.
    A stage dance illustrating the poetry of motion by a series of graceful movements, combined with an attractive arrangement of drapery, lights, and shadows, but telling no story, portraying no character, and depicting no emotion, is not a "dramatic composition," within the meaning of the copyright act.

In Equity. Bill by Marie Louise Fuller against Minnie Renwood Bemis for infringement of copyright. On motion for preliminary injunction. Denied.

The subject of the copyright was a stage dance, which is described in the following copyrighted composition:

#### "THE SERPENTINE DANCE, BY MARIE LOUISE FULLER.

##### "*Tableau I.*

"Stage dark. Music. Valse. Dancer enters in the dark, unseen, and stands at back of stage, up center. Lights thrown suddenly from right and left corner, first entrances, on dancer center. Picture: Dress held high above head from the back and front. After the picture the dance begins, dancer still holding dress high above the head. The dancer, with slow, sliding, valse step, moves down towards right corner, the two lights following like a medallion, then, with a backward movement to time of music, and several turns, reaches center again. Then the same down to left corner and back. Then with a round movement from one side to the other, she dances down center to footlights, followed by several whirls or turns which bring dancer back to center. (All this time the dress is held up above the head behind as in the picture in the beginning.) She makes two turns, dropping dress, which the two whirls or turns bring into place. She takes dress up at each side, turns body from side to side, swinging dress from one side low in front to high at back, forming a half umbrella shape over the head, first with one side of dress and then the other. (This movement can be termed the 'Umbrella Movement,' and presents a beautiful stage effect.) The dancer stands at center, catches up dress at each side towards the bottom, holds it high at each side, and moves hands from right to left, imitating a spiral shape, dancing towards footlights. When reaching footlights, changes straight movement of arms, and, keeping same motion, gives a rounding, swerving movement that causes dress to assume the shape of a large flower; the petals being the dress in motion. Then several quick turns up towards back, (dress up on each side,) quick run down stage to the center, and followed by several more whirls, and, twining the skirt over both arms, drops on one knee, holding dress up behind head to form background. (This picture is a very graceful climax and finish to the first tableau of the dance.) Picture. Lights off. Darkness. Lights up, and dancer gone.

"(*Finale* of first tableau.)

### "*Tableau II.*

"Stage dark. Music. Valse. Light thrown same as in first tableau, on dancer. Center of stage, up at back. Dancer picks up dress at each side, whirls it over each arm frontwise until it is held plain across the front, and feet are clearly seen, then a dancing step follows, after which the skirt is unwound, and, lifting it up to back and down, the dancer advances towards footlights, lifting the dress up and down sidewise to represent the opening and closing of a huge flower. After reaching center down at footlights, she turns back to audience, and the lights change to another color. Then by turning from right to left, and stooping with each turn, and manipulating skirt from left to right and right to left, she forms a huge lily, turning the body half around at each step; and same time dancing up to center at back, she turns, faces audience, and lifting dress high from left to right and back with an upward movement, and bending body with each half turn, forms a rose as falling to pieces, dancing down center to footlights, returning to back of stage afterwards with several turns, then stands center, still for a moment, holding dress high at each side, then for an inward and outward movement in front the dress forms waves or breakers like one sees in the surf at the seashore. Dancer does this while dancing towards front, then quickens and broadens the motion while dancing backwards to center, then a quick run down stage and back, picking up dress in front and holding it up, bends back to audience so that face can be clearly seen, holding dress up as background. (This whole tableau presents a dazzling and bewildering fanciful picture.) Picture. Lights off. Lights up, and dancer gone.

"(*Finale* of second tableau.)

### "*Tableau III.*

"Stage dark. Music. Light thrown on as in second movement. Dancer seen at center. Dress held up at each side. Picture for a moment. Lights off. Light on at back from upper right and left corners, making a stream of light across stage at back. Dancer stands directly in front of light, throws dress over arms, holding them high, showing figure as in a spider's web. This may be called the 'Spider' or 'Transparent' movement or dance. Dance to right and back to left, then to center in front of light, holding dress in same position. Then stepping back, she dances in the stream of light, manipulating dress, bending low to right and left, making two turns when the back light is taken off and the front light thrown on. Dancer lifts dress high at each side, and makes detour of entire stage, imitating a huge butterfly. After this movement, which is finished up center at back, dancer turns back to audience, and bends back, looking at audience, then up again, turning, throws dress high up in front, forming circles running up and down in front, hiding the dancer, then dancing from left to right and right to left, down front, waving dress to and fro, following with several turns, sinks on stage; the dress falling over and completely hiding the dancer. Picture of dress; dancer apparently gone, disappeared. Lights off. Gas on. Dancer gone.

"(Finish.)"

After setting out the proceedings by which the copyright was obtained the bill proceeds:

"And your orator shows that, in and by the aforesaid proceedings, she intended to obtain, hold, and possess, and now holds and possesses by virtue thereof, not only the sole and exclusive right and liberty to print and publish such dramatic composition, but also the sole and exclusive right to act, perform, and represent the said dramatic composition, and cause it to be acted, performed, and represented, on any stage or public place, during the whole period for which the said copyright was obtained."

The bill then states that the said dramatic composition was performed by the orator at Madison Square Theater, New York, with great success, and pecuniary profit to her. It is then further averred:

"That the cause of such success, fame, and profit was the originality and extraordinarily novel nature of the incidents, scenes, and tableaus of said composition, which consists of a series of fantastic, graceful, unique, harmonious, and highly pleasing dances, each of which portrays or represents different characters, and all of which appeal to the sense of the beautiful and the æsthetic emotions. And your orator shows that this composition was entirely novel and unlike any dramatic incident, scene, or tableau known to have been theretofore represented on any stage, or invented by any author, before your orator invented and composed the same in her said composition, and produced and represented the same, as aforesaid. And the said composition was, as soon as produced and represented by your orator, and ever since has been and is now, regarded, whenever it has been witnessed, to be one of the most novel, attractive, and graceful and unique and beautiful incidents and productions ever represented on the public stage; that the playing of the said composition caused the same to become famous in all parts of the United States; and that said composition was repeatedly produced and represented, by and for the advantage of your orator, in many cities of the United States, and everywhere to the great profit and credit of your orator."

The infringement complained of is the production by defendant of this "dramatic composition" upon the public stage, with merely colorable alterations.

*Isaac N. Falk,* for complainant.

"Complainant's creation is a "dramatic composition," within the meaning of Rev. St. § 4952. A drama is generally regarded as being a composition in which the action is not narrated or described, but represented. Drone, Copyr. 587; Wand. Theatres, 431. A pantomime is a "dramatic piece," within the meaning of 3 & 4 Wm. IV. c. 15. *Lee* v. *Simpson,* 3 C. B. 871, 881. See, also, *Russell* v. *Smith,* 12 Q. B. 235, 236. "A composition, in the sense in which that word is used in the act of 1856, is a written or literary work invented and set in order. A dramatic composition is such a work in which the narrative is not related, but is represented by dialogue and action. * * * A pantomime is a species of theatrical entertainment in which the whole action is represented by gesticulation, without the use of words. A written work, consisting wholly of directions set in order for conveying the ideas of the author on a stage or public place, by means of characters who represent the narrative wholly by action, is as much a dramatic composition, designed or suited for public representation, as if language or dialogue were used in it to convey some of the ideas. * * * Movement, gesture, and facial expression, which address the eye only, are as much a part of the dramatic composition as is the spoken language, which addresses the ear only; and that part of the written composition which gives direction for the movement and gesture is as much a part of the composition, and protected by the copyright, as is the language prescribed, uttered by the characters. And this is entirely irrespective of the set of the stage, or of the machinery or mechanical appliances, or of what is called, in the language of the stage, scenery, or the work of the scene painter." *Daly* v. *Palmer,* 6 Blatchf. 264, 268.

*Alexander & Green,* for defendant.

LACOMBE, Circuit Judge. Whatever may be the language of the opinion in *Daly* v. *Palmer,* 6 Blatchf. 264, the decision is not authority

for the proposition that complainant's performance is a dramatic composition, within the meaning of the copyright act. It is essential to such a composition that it should tell some story. The plot may be simple. It may be but the narrative or representation of a single transaction; but it must repeat or mimic some action, speech, emotion, passion, or character, real or imaginary. And when it does, it is the ideas thus expressed which become subject of copyright. An examination of the description of complainant's dance, as filed for copyright, shows that the end sought for and accomplished was solely the devising of a series of graceful movements, combined with an attractive arrangement of drapery, lights, and shadows, telling no story, portraying no character, depicting no emotion. The merely mechanical movements by which effects are produced on the stage are not subjects of copyright where they convey no ideas whose arrangement makes up a dramatic composition. Surely, those described and practiced here convey, and were devised to convey, to the spectator, no other idea than that a comely woman is illustrating the poetry of motion in a singularly graceful fashion. Such an idea may be pleasing, but it can hardly be called dramatic. Motion for preliminary injunction denied.